```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

RAMONA RAMOS; ILUMINADA GIRON;
LILLIE JOHNSON and BARBARA
NOELSAINT,

                Plaintiffs,

vs.                                  Case No.   2:04-cv-308-FtM-33SPC

LEE COUNTY SCHOOL BOARD,

                Defendant.
_____

### ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. #20)filed on April 25, 2005. Plaintiffs filed a Statement of Undisputed Facts and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Doc. #25) on May 16, 2005. In response, Defendant filed a Reply Brief (Doc. #36) on July 5, 2005. Upon review of the Defendant's Motion for Summary Judgment, Plaintiffs' response, and Defendant's Reply Brief, the Court grants summary judgment in favor of the Defendant.

### I.  STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for

summary judgment; only the existence of a genuine issue of material fact will preclude grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffrey v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(citing Celotex, 477 U.S. at 324). If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161,

1164 (11th Cir. 2003).  If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment.  <u>Samples *ex rel.* Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing <u>Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)).

## II. BACKGROUND

Plaintiffs are instructors in the Head Start program. (Doc. #25 at 2).  The Head start Program is a federally funded program administered by the Lee County School Board (Board). (Doc. #25 at 1-2).  In establishing the Head Start program, Congress desired to create a program that would properly prepare underprivileged children for school. (Doc. #25 at 1).  As such, Head Start pupils have not reached school age —ranging in age from  three-and-a-half to five-and-a-half. (Doc. #25 at 2).  Attempting to achieve the program's goals, the instructors engage in a wide array of activities.  These activities are both behavioral and academic, with an emphasis on the academic.[1]  As part of this academic advancement, instructors give lessons on typical school subjects.

---

[1] During his deposition, Plaintiff Giron described the Head Start Curriculum as consisting of "language, literacy, early math, social, emotional and science." (Doc. #18, Ex. 1 at 14-15).  This listing indicates that the Head Start curriculum contains both behavioral and academic aspects.  Also, the list reveals that the curriculum emphasizes the academic —social and emotional being the only behavioral subjects. (Doc. #18, Exhibit 1 at 14-15).

(Doc. #20 at 5).  To ensure that students grasp the material, the instructors input information as to each student into a computer program —Galileo— which tracks the students progress. (Doc. #25 at 4).  In turn, Galileo determines the degree of the student's success. (Doc. #25 at 4).

To ensure advancement, the instructors develop individual methods to assist struggling students. (Doc. #20 at 5).  In addition, the instructors conduct at least two parent conferences and two home visits annually. (Doc. #20 at 7).  While conducting the conferences and visits, the instructors update parents as to their student's progress and tackle any obstacles the student may be encountering. (Doc. #20 at 7).

Like other teachers, the Head Start instructors must follow certain procedures and are subject to supervisory review. (Doc. #20 at 7-8).  As one of the reviewers, the school principal conducts classroom observations. (Doc. #20 at 8).  These observations vary from once a month to twice a week. (Doc. #20 at 8).  In fact, from the parties' rendition of the facts, it appears that the principal is the chief source of review.  In turn, the Board evaluates the principal.

In conducting the duties of a Head Start instructor, the Plaintiffs allege that they consistently work in excess of forty hours a week. (Doc. #25 at 6).  Moreover, Plaintiffs assert that they are not compensated for these excess hours.  (Doc. #25 at 6).

4

Consequently, Plaintiffs allege that the Board is in violation of the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et. seq. (Doc. #1 at ¶1).  Defending, the Board alleges that the instructors fall within the professional exemption for teachers —29 C.F.R. § 541.3(a)(3)(2004). (Doc. #36 at 1).  As such, the Board asserts that it is discharged from FLSA's overtime requirements.  The Court agrees.

### III. ANALYSIS

A.   FLSA and the Teacher Exemption

Under FLSA, employees working over forty hours per week must be paid overtime at one-and-a-half times their regular rate of pay. See 29 U.S.C. § 207(a).  However, overtime provisions do not apply to employees employed in a bona fide executive, administrative or professional capacity.  See 29 U.S.C. § 213(a)(1).  Pursuant to § 213(a)(1), FLSA recognizes teachers as exempt professionals.  In order to provide a more complete picture of Congress's definition of exempt professionals, Congress bestowed upon the Department of Labor (DOL) the authority to create regulations defining exactly which positions qualify for the professional exemption.   See 29 U.S.C. § 213(a)(1) (giving the Department of Labor the power to define and delimit those positions qualifying for the exemption).

Accepting this grant, the DOL adopted regulations outlining the positions included in the FLSA's overtime exemptions.  See 29

C.F.R. § 541.[2]  Under regulations in force at the time of the alleged violations in this case, the DOL recognized several exemptions to the overtime requirements.  Among these was an exemption for teachers.  See 29 C.F.R. § 541.3(a)(3).[3]  Identifying this exemption, the Board argues that Plaintiffs fall squarely within the regulations' definition of a teacher.[4]  In

---

[2] In United States v. Mead Corp., 533 U.S. 218 (2001), the Supreme Court stated:

> When Congress has "explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation," *Chevron*, 467 U.S. at 843-844, and any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute.

Id. at 227.

[3] 29 C.F.R. § 541.3 (a) is one of five requirements. The other requirements comprise the remaining sections of 29 C.F.R. 541.3 –(b)through (e).  However, as mentioned below, the regulations create two tests: a short and a long test.  If qualified for the long test, the position is deemed to satisfy all sections of 29 C.F.R. § 541.3.

[4] Effective August 23, 2004, the DOL amended its existing exemption regulations. See Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122 (Apr. 23, 2004) (indicating that the amended regulations are effective on August 23, 2004). Since the Complaint was filed June 7, 2004 —before the effective date of the new regulations— and the DOL has not indicated that the new regulations should be applied retroactively, the Court will apply the old regulations.  Under the new regulations, the DOL appears to have codified existing case law interpreting its regulations.  Specifically, the new regulations adopt the prevailing view that FLSA's teacher exemption extends beyond traditional academic teachers.  For instance, the new regulations explicitly include as teachers "teachers of kindergarten or *nursery school* pupils; *teachers of gifted or disabled children*; *teachers of skilled and semi- skilled trades and occupations*; *teachers engaged in automobile driving instruction; aircraft flight instructors; home economics teachers*; and *vocal or instrumental musical*

asserting the teacher exemption as an affirmative defense, the Board bears the burden of proving that Plaintiffs are exempt from FLSA's overtime provisions.  See Hogan v. Allstate Ins. Co., 361 F.3d 621, 625 (11th Cir. 2004).  Further, courts are to narrowly construe the exemptions against the employer.  Id.

In enacting its regulations, the DOL created two tests to determine whether a position qualifies for the professional exemption: the long test —29 C.F.R. §§ 541.3(a)-(e)— and a short test —29 C.F.R. § 541.3(e) and 29 C.F.R. § 541.315.  The short test is applied if an employee is "compensated on a salary or fee basis at a rate of at least $250 per week exclusive of board, lodging, or other facilities ...."   See 29 C.F.R. § 541.3(e).[5]  Here, both

---

*instructors*." See 29 C.F.R. § 541.303(b)(emphasis added).

[5] The short test established in § 541.3 is restated in § 541.315.  In both regulations, the test is the same; however, each regulation uses different wording.  Section 541.315 condenses aspects of § 541.3 and attaches labels to them.  The Court feels one such condensation may have resulted in some confusion. Namely, in regulation § 541.315(a), the regulation refers to learned professionals.  In doing so, the regulation is labeling the positions described in § 541.3(a)(1), (3), and (4).  The Court suspects that the Plaintiffs erroneously interpreted this language to mean that teachers also needed to meet the criteria established for § 541.3(a)(1) professionals —"knowledge of an advance type in a field of science or learning customarily acquired by a prolonged course of specialized instruction...." However, this not the case. To qualify for the professional teacher exemption, no specific degree is required.  While there is no specific degree requirement, the regulations recognize that states now require their public school teachers to obtain a teaching certificate.  See 29 C.F.R. § 541.301(g)(3).  In fact, the regulations identify that "possession of an elementary or secondary teacher's certificate provides a uniform means of identifying the individuals contemplated as being within the scope of the exemption provided by the statutory language and defined in § 541.3(a)(3) with respect to all teachers employed in public schools ...." Id.  However, § 541.301(g)(3) does not  extend the exemption only to those with teaching certificates;

7

parties concede that the Plaintiffs are each compensated in excess of $250 a week. Thus, the Court applies the short test.

As applied to the teacher exemption, the short test has two main prongs:[6] (1) the employee's primary duty must consist of the performance of "[t]eaching, tutoring, instructing, or lecturing in the activity of imparting knowledge and ... [be] employed and engaged in this activity as a teacher in the school system or educational establishment or institution by which he is employed[.]";[7] and (2) the employment must require "the consistent exercise of discretion and judgment ...." See 29 C.F.R. § 541.3(a)(3).

---

rather, the regulations simply identifies certified teachers as those contemplated in § 541.3(a)(3). While certified teachers may have been contemplated, the regulations clearly extend to Head Start instructors. Although the rationales underlying the teacher exemption are not explicitly enumerated, they can be drawn from the penumbra of the regulations. In exempting teachers from FLSA's overtime provisions, Congress and the DOL realized that teaching —like the other exempt professions— usually requires a weekly time commitment in excess of forty hours a week. However, unlike other forms of employment, these excess hours are built into a teacher's salary. Since Head Start instructors duties closely parallel those of "regular academic" teachers, their weekly workload is also likely to exceed forty hours. (Doc. #18, Ex. 1 at 31-32). However, like teachers, compensation for these excess hours is already included in their annual salary. Thus, after addressing the underlying rationales and applying those rationales to Head Start instructors, it is plain that while the DOL may have contemplated "regular academic" teachers in drafting §541.3(a)(3), the exemption is not limited to those teachers.

[7] Section 541.3 (e) enumerated the requirements by referring back to employment descriptions described in § 541.3 (a)(1), (2), and (3). In doing so, § 541.3(e) meant to include incorporate those earlier descriptions into its short test.

To qualify as an exempt teacher, the employment must satisfy both prongs. Thus, if the Head Start instructor position meets the two prong test, the Court must find Plaintiffs exempt from FLSA's overtime requirements.

1. *The First Prong*

The first prong can be subdivided into three elements: (1) duties, i.e., "[t]eaching, tutoring, instructing"; (2) position, i.e., "engaged in this activity as a teacher"; and (3) employer identity, i.e., "employed and engaged in the school system or educational establishment or institution by which he is employed ...."

As to the first element, Plaintiffs' own depositions weaken any argument that Plaintiffs are not engaged in "teaching, tutoring, or instructing ...." On this point, Plaintiff Giron's deposition is particularly informative. Specifically, the Court references two portions of Giron's depostion. In the first referenced portion, Giron stated that Head Start instructors and "regular academic" teachers share a common job description. (Doc. #18, Ex. 1 at 31). Following this statement and comprising the second referenced portion, Giron continues stating that "[e]verything a certified teacher does we do. The only difference is the pay." (Doc. #18, Ex. 1 at 32). Based on these two referenced portions, the Court need only apply logic to find that the first element is satisfied. Deductively, if "regular academic"

teachers clearly "teach[], tutor[], or instruct[]"[8] and the Plaintiffs are tasked with the same duties as "regular academic" teachers, Plaintiffs must also "teach[], tutor[], or instruct[]". Accordingly, the first element of the first prong is satisfied.

In analyzing the second element, "engaged in this activity as a teacher," the Court is again influenced by the two above referenced portions of Giron's deposition. Again, Giron's statements make plain that Head Start instructors are employed as teachers, she said, "the only difference is the pay." Further, since (1) duties, not pay, establish a position's purpose[9];(2) Plaintiffs' share the same job duties as "regular academic" teachers; and (3) regular teachers are clearly employed as teachers,[10] it is manifest that the Board employs the Plaintiffs as teachers. Consequently, the second element of the first prong is established.

As to the third element —"employed and engaged in this

---

[8] "Teaching personnel may include ... *Regular academic teachers*[] ...." 29 C.F.R. 541.301(g)(2)(2004)(emphasis added).

[9] While the professional exemption has a wage requirement, it is an exemption-wide requirement —$170 per week. See 29 C.F.R. § 541.3(e). In other words, there is one overarching wage requirement applicable to all professional exemptions. Once satisfied, the regulations do not further delineate exempt positions from non-exempt positions based on wage, at least not as to teachers. So, if a pair of employees' job descriptions meet the professional exemption's requirements and both satisfy the exemption-wide wage requirement, it is irrelevant that one employee makes more then the other —both are exempt.

[10] See supra note 8

activity as a teacher in the school system or educational establishment or institution by which he is employed"— the Plaintiffs allege that they are not employed by the Board. Rather, Plaintiffs claim that they are employed by Head Start. Rejecting this argument, the Court refers back to Plaintiffs' complaint. In their complaint, the Plaintiffs explicitly assert that the Board is their employer. Confirming this assertion, Plaintiffs —in each of their depositions— state that they are employed by the Board.(Doc. #18, Ex. 1 at 5; Doc. #18, Ex. 4 at 4; Doc. #18, Ex. 8 at 5; Doc. #18 Ex. 10 At 5-6). Moreover, if the Court were to accept Plaintiffs' contention that Head Start and not the Board is their employer, then Plaintiffs' claims against the Board should be dropped —Head Start would be the proper Defendant. For all these reasons, the Court finds that the Board is Plaintiffs' employer.

Since the Court finds that the Board is the Plaintiffs' employer, the next question is: whether the Board qualifies as a "school system, or educational establishment or institution"? It is clear that the Lee County *School System* falls squarely within the meaning of "school system." Further, Plaintiffs do not dispute that they teach at schools within the purview of the Lee County School System.[11] Taken together, it is apparent that the Board and the schools under its jurisdiction represent a school

---

[11] "The ordinary meaning of the term 'educational institution' is 'school.'" Wilkes v. Dist. of Columbia, 721 F. Supp. 1383, 1386 (D.D.C. 1989).

11

system and educational institutions, respectively.  Thus, when coupled with the satisfaction of the first two elements of the first prong, all elements of the first prong are satisfied. Consequently, since all elements are satisfied, the first prong is met.

    2. *Second Prong*

On its website, the DOL contains a fact sheet.[12]  In drafting the fact sheet, the DOL intended to provide "general information" on the FLSA "as defined by the regulations". Granted, the fact sheet is intended to provide information as to the new regulations effective August 23, 2005.  However, many of the new regulations are similar, if not identical, to the old regulations.  For instance, the new regulations provide a nearly synonymous definition of teachers as the old regulations —"primary duty of teaching, tutoring ...."  Compare 29 C.F.R. §

---

[12] While the information included on the DOL fact sheet is not binding on the Court, the Court recognizes, "that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer ...." Chevron v. NRDC, Inc., 467 U.S. 837, 844 (1984).  Admittedly, the level of deference depends on "the degree of the agency's care, its consistency, formality, and relative expertness and to the persuasiveness of the agency's position ...." Mead, 533 U.S. at 228 (citing Skidmore v. Swift & Co., 323 U.S. 134, 139-140 (1944)). Granted, on a spectrum of controlling authority, fact sheets would fall on the low end.  However, the Court recognizes that an "[a]dministrator's policies are made in pursuance of official duty, based upon more specialized experience and broader investigations and information than is likely to come to a judge in a particular case." Skidmore, 323 US at 134, 139.  Thus, while realizing that a fact sheet's directive is not binding on the Court, it is entitled to some respect.

541.303 (2004) with 29 C.F.R. § 541.3(a)(3). As such, the Court deems it is proper to use certain portions of the fact sheet as a reference tool.

Doing so, the Court identifies Fact Sheet #17D. Specifically, the Court references the Fact Sheet's teacher section. In this section, the DOL asserts that "[h]aving a primary duty of teaching, tutoring, instructing or lecturing in the activity of imparting knowledge includes, by its very nature, exercising discretion and judgment."[13] Since the Court has established that Plaintiffs fall within the scope of the regulations' definition of a teacher and accepting the Fact Sheet's conclusion that teachers, by their very nature, exercise the requisite discretion and judgment, the Court finds that Plaintiffs exercise the requisite discretion and judgment.

Thus, the Plaintiffs employment satisfies the two prongs of the short test. As such, the Court finds that Plaintiffs fall within the ambit of FLSA's professional teacher exemptions. Accordingly, as to Plaintiffs, FLSA's overtime provisions are inapplicable to the Board.[14]

---

[13] *Fact Sheet #17D: Exemption for Professional Employees Under the Fair Labor Standards Act(FLSA)*, at http://www.dol.gov/esa/regs/compliance/whd/fairpay/fs17d_professional.htm

[14] In reaching its final decision, the Court also referenced Smith v. Friends of Children, Inc., 616 F. Supp. 180 (S.D. Miss. 1985). See generally Id.(finding the FLSA's overtime provisions incompatible with the Economic Opportunity Act —the Act that

13

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant's Motion for Summary Judgment (Doc. #20) is hereby GRANTED.  The Clerk of the Court shall enter judgment accordingly and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this <u>29th</u> day of September, 2005.

                                             /s/ Virginia M. Hernandez Covington
                                             VIRGINIA M. HERNANDEZ COVINGTON
                                             UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record

---

governs the Head Start program— and holding that the Economic Opportunity Act's compensatory standard supersedes the FLSA's overtime provisions).